United States Court of Appeals,

Fifth Circuit.

No. 93-2610.

Gopalakrishnan N. MANGATTU, Derryl F. Remedioa, and Thaluthara K. Francis, Plaintiffs-Appellants,

v.

M/V IBN HAYYAN, et al., Defendants,

United Arab Shipping Co. (S.A.G.), and M/V IBN AL ATHEER, Defendants-Appellees.

Oct. 17, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, DeMOSS, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The district court found that Appellee, United Arab Shipping Co, (S.A.G.) (UASC) is a foreign state under the Foreign Sovereign Immunities Act (FSIA), and released Appellee's vessel, which Appellants had seized, without requiring security. We affirm.

## I. FACTS

Gopalakrishnan N. Mangattu, Derryl F. Remedioa and Thaluthara K. Francis, Plaintiffs-Appellants, are citizens of India who worked as merchant seamen on M/V HAYYAN, a ship owned by defendant, UASC. On December 1, 1992, Appellants filed suit claiming unpaid earned wages, double wages, personal injuries and other damages, *in personam* against the vessel owner and *in rem* against the vessel on which they worked, M/V IBN HAYYAN. The vessel owner, UASC is wholly owned by six foreign sovereigns: Saudi Arabia, Kuwait, Qatar, United Arab Emirates, and Iraq each own 19.33%, and Bahrain owns 3.335%.

On December 12, 1992, Appellants dismissed the *in rem* action. UASC subsequently answered, and discovery commenced. On July 14, 1993, Appellants filed a motion requesting the attachment of the M/V IBN AL-ATHEER, which is also owned by UASC, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Matters. Appellants asserted that they had a maritime lien against the M/V HAYYAN, the M/V HAYYAN had left American port, but the M/V IBN AL-ATHEER was currently docked at an American port, and thus the conditions for an *in rem* action had been fulfilled. They also sought leave to file a second amended complaint re-asserting an *in rem* action. The magistrate judge issued an order which granted leave to file the second amended complaint, which added the *in rem* action and authorized attachment under Rule B. On July 24, 1993, Appellants served the maritime attachment and garnishment on the M/V IBN AL-ATHEER.

The district court, after hearing, found that UASC was a foreign state under the Foreign Sovereign Immunities Act and that Appellants could not arrest or attach the vessel. Therefore the district court ordered release of the vessel and denied Appellants' request for security. The Court later denied a motion for reconsideration. Appellants appeal those orders.

II. IS UASC AN AGENT OR INSTRUMENTALITY OF A FOREIGN STATE?

We must determine whether UASC, which claims to be a foreign state under the Foreign Sovereign Immunities Act is entitled to that status. The question turns on the definition of "foreign state," in 28 U.S.C. § 1603, which provides:

Definitions

For purposes of this chapter—

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

In order to qualify for treatment as a foreign state, UASC must meet all three requirements under § 1603(b). There is no dispute that Appellee satisfies (b)(1). This appeal focuses on the second and third requirements.

a. Can foreign states pool their ownership interest?

Appellants contend that § 1603(b)(2) requires that 51% or more of Appellee's stock be owned by a single foreign state, and that several foreign states cannot pool their ownership interests to attain the majority ownership required by the statute. There is no authority in this or any other circuit interpreting this language. Appellants contend that *Linton v. Airbus Industrie,* 794 F.Supp. 650 (S.D.Tex.1992)[1] supports their position. In dicta, that district court did articulate the argument against pooling relied on by

---

[1]On subsequent appeal, this Court dismissed the appeal for lack of jurisdiction to review the appeal. *Linton v. Airbus Industrie,* 30 F.3d 592 (5th Cir.1994).

appellants:

> First it is far from clear that pooling is allowed under FSIA. To approve pooling, the Court must assume that FSIA applies to entities 50% or more of whose shares are owned by foreign states, even though no single foreign state owns more than 50%. Section 1603, however, speaks only of entities 50% or more of whose shares are owned by a foreign state, singular. Arguably, had Congress wished to permit pooling, it could have easily defined a foreign state as an entity 50% or more of whose shares are owned by a foreign state or states. Because Congress did not so define foreign state, it is not for the courts to substitute this definition for the one provided.[2]

The *Linton* court went on to say that while it was not too much of a stretch to assume that Congress intended to allow pooling, the fact situation in *Linton* was not a question of pooling. Instead, the company in question was owned by other entities that were, in turn, partially owned by foreign states and partially controlled by private interests. The court found that to allow pooling of interests by companies owned by other entities, which were partially owned by foreign states would substantially broaden the reach of FSIA, which it declined to do.

Appellee cites two district court cases that have approved pooling in cases analogous to this one, and distinguishes *Linton,* pointing out that the issue of whether an entity owned 100% by a group of sovereigns could be considered a foreign sovereign under § 1603 of the FSIA was not before the court in that case. *LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400 (E.D.Va.1988) involved a corporation established by treaty among four Persian Gulf states. In that case the district court rejected the argument that FSIA was

---

[2]*Linton,* 794 F.Supp. at 652. On appeal, this Court noted that the district court's reasoning should be examined in light of the rules of statutory construction and the cases in which pooling has been considered. 30 F.3d at 597 n. 29.

inapplicable unless a majority ownership was vested in a single state:

> This is an unnecessary literalism that runs counter to the Act's purpose and ignores the well-established international practice of states acting jointly through treaty-created entities for public or sovereign purposes. If the policies that animate the FSIA are to be given their full range, it must, therefore, apply to treaty created instrumentalities jointly owned by foreign states. *Id.* at 1406.

See also, *International Ass'n of Machinists v. OPEC,* 477 F.Supp. 553 (C.D.Cal.1979) (The court found that OPEC is governed by FSIA.)

Appellants contend that UASC is not a treaty created entity, as the English word "treaty" is not used in the English language version of the Agreement and Articles filed in the record of this cause. The UASC was created in 1976 by an agreement among the governments of the six nations, to "strengthen the economic ligaments among them to develop their resources." The articles of association dictate that the text of the both the Agreement for Establishment and the Articles of Association shall be deemed of force in all participant States even though prejudicial to their local laws. A treaty is simply a compact made between two or more independent nations with a view to the public welfare. *United States v. Belmont, N.Y.,* 301 U.S. 324, 330-32, 57 S.Ct. 758, 761, 81 L.Ed. 1134 (1937). A treaty is not only a law but also a contract between two nations and must, if possible, be so construed as to give full force and effect to its parts. *United States v. Reid,* 73 F.2d 153, 155 (9th Cir.1934). We conclude that UASC is a treaty created instrumentality for purposes of the FSIA.

We hold that an entity 100% owned by foreign states, created

by an agreement of all the participating states, satisfies the requirements of § 1603(b)(2).

b. Was UASC created under the laws of a third country?

Appellants argue that UASC fails to meet § 1603(b)(3) because it was "created under the laws of a third country." Appellee is a Kuwait corporation. Appellants take the position that only Kuwait's interest (less than 20%) can be considered in determining ownership interest, because UASC is "created under the laws of a third country" as to all participating nations other than Kuwait.

> The rationale of this [§ 1603(b)(3) ] exclusion is the common sense presumption that when a foreign state establishes a company under the laws of yet another state or acquires a company created by another country, the intention is to engage in private commercial activity, not public, non-commercial activity. The key to the presumption's validity is that the instrumentality is created or established in a country different from the owner nation. *LeDonne v. Gulf Air, Inc.*, 700 F.Supp. 1400, 1406 (E.D.Va.1988).

The record establishes that UASC was created by an agreement that was given the force of law in all member nations, and incorporated under the laws of one of its members. Such an entity satisfies both the purpose and the letter of § 1603(b)(3).

### III. DID UASC WAIVE IMMUNITY FROM ATTACHMENT?

UASC concedes that it engaged in commercial activity in the United States. Appellants rely on the §§ 1605[3] and 1606[4] for the

---

[3]§ 1605 provides in pertinent part:

§ 1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign

proposition that once UASC engaged in commercial activity, they lose all benefit of FSIA immunity, and are subject to all the processes and remedies available against any defendant.

Section 1605 talks specifically about waiver of jurisdictional immunity, and § 1606 provides that a foreign state shall be liable in the same manner and to the same extent as a private individual, except for a limitation on punitive damages, neither of which inform the question of attachment.

Rather, the issue of attachment is governed by § 1609, which provides, "the property in the United States of a foreign state shall be immune from attachment arrest and execution, except as provided in sections 1610 and 1611 of this chapter." The plain words of the statute clearly preclude reading the language of §§ 1605 and 1606 to control the issue in this case. Under § 1610(d), property of a foreign state used for commercial activity in the United States shall not be immune from attachment prior to the entry of judgment if the purpose of attachment is to secure satisfaction of a judgment that may ultimately be entered against

state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

[4] § 1606 provides as follows:

§ 1606. Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and tot he same extent as a private individual under like circumstances[.]

the foreign state and not to obtain jurisdiction. So the real question is whether the purpose of the attachment was to secure satisfaction of a possible judgment or to gain jurisdiction. The Motion for Issuance of Warrant of Arrest filed by Appellants specifically sought to attach the vessel in order to subject UASC, a nonresident defendant, to personal jurisdiction. The procedure employed by Appellants, Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, provides a basis for attachment only in the situation where an *in personam* claim is made against a defendant not found within the district. Appellants later filed Plaintiff's Request for Security for Release for the Arrest M/V IBN AL ATHEER. In that pleading Appellants asserted that the vessel had been seized in accordance with a court order authorized by Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, and asked the district court to set an amount for the release bond in accordance with Rule E of the Supplemental Rules, mentioning the Appellants desired adequate security for their claims.

The district court did not err in releasing the vessel ordered seized by the magistrate judge for the purpose of attaining jurisdiction. However, if the Appellants plead and establish an entitlement to seizure of UASC's property for security of their claims under § 1610(d), nothing in this opinion should be construed to preclude that remedy.

## IV. WAIVER

Attachment is also available in the case of an explicit waiver of immunity. Appellants assert, without authority, that

explicit waiver may be found when a foreign state subjects itself to the terms of the subsequent law of another country. Appellants claim that their claim arising under 46 U.S.C. § 10313, *et seq.* is based on a subsequent law of another country. If the subsequent law of another country in fact waives immunity, it would be an implicit waiver, which is not a basis for abrogation of immunity under § 1610. Because the record contains no evidence of explicit waiver, we find no merit in this ground of error.

## V. CONCLUSION

The order of the district court is AFFIRMED.