896 F.Supp. 125 (1995)
GARDINER STONE HUNTER INTERNATIONAL; Robert R. Stone, d/b/a Gardiner Stone International, Plaintiffs,
v.
IBERIA LINEAS AEREAS DE ESPANA, S.A.; Aerolineas Argentinas, S.A.; and Venezolana Internacional De Aviacion, S.A., Defendants.
No. 94 Civ. 6976 (JGK).
United States District Court, S.D. New York.
August 1, 1995.
*126 *127 Day, Berry & Howard, Stamford, CT, by Joy Beane, and Stanley Twardy, Jr., for plaintiffs.
Bigham Englar Jones & Houston, New York City by Douglas Szulman, and Paul Ambos, for defendant Aerolineas Argentinas, S.A.

OPINION & ORDER
KOELTL, District Judge:
This action is brought by Gardiner Stone Hunter International and Robert R. Stone, d/b/a Gardiner Stone International, to recover compensation for work allegedly performed for the defendant airlines, Iberia Lineas Aereas De Espana, S.A., Aerolineas Argentinas, S.A., and Venezolana Internacional De Aviacion, S.A., during the period from August, 1991 through October, 1992. The plaintiffs allege that they conducted employee searches on behalf of the defendants for persons to fill various positions at the airlines for which they have not been compensated as agreed. The amended complaint (hereinafter "the complaint") pleads common law claims for breach of contract, breach of good faith and fair dealing, recovery of an account stated, and unjust enrichment, as well as a statutory claim under New York General Business Law § 349 for unfair and deceptive trade practices. Jurisdiction is predicated on 28 U.S.C. § 1330, a provision of the Foreign Sovereign Immunities Act ("FSIA"), and on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). Defendant Aerolineas Argentinas, S.A. has moved for dismissal of the complaint against it for lack of subject matter jurisdiction.
The jurisdictional allegations in the complaint are not disputed. The complaint alleges that defendant Aerolineas Argentinas, S.A. ("Aerolineas Argentinas") is an Argentinean corporation with its principle place of business in Buenos Aires and a place of business in New York, New York. It further alleges that the Argentine Republic owned a plurality of Aerolineas Argentinas' stock at the time of the events alleged in the complaint, but that subsequently defendant Iberia Lineas Aereas de Espana, S.A. ("Iberia"), alleged to be a state owned Spanish corporation, acquired an 85% ownership interest in Aerolineas Argentinas, reducing the interest of the Argentine Republic to 5%. Complaint ¶¶ 4, 5.

I.
Aerolineas Argentinas argues that the Court does not have diversity jurisdiction over the claims against it pursuant to § 1332(a),[1] because there is no reasonable possibility that the amount in controversy *128 exceeds $50,000. The parties agree that there is complete diversity of citizenship between the plaintiffs and defendants. The only issue raised with regard to diversity jurisdiction is whether the complaint satisfies the jurisdictional minimum.
The plaintiff has the burden of proving that "it appears to a `reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781 (2d Cir.1994) (citation omitted). The complaint alleges that Aerolineas Argentinas owes the plaintiffs $46,600 in unpaid fees. The amounts claimed against the other defendants cannot be aggregated with this amount to reach the jurisdictional minimum, because the claims against the other defendants are separate and distinct from the claims against Aerolineas Argentinas.[2] A complaint alleging diversity of citizenship will only be dismissed if it appears to a legal certainty that the plaintiff's claim does not exceed $50,000. See Tongkook, 14 F.3d at 784 (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 589-90, 82 L.Ed. 845 (1938)); Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir.1982).
The plaintiff has asserted a claim for unfair and deceptive trade practices under New York General Business Law § 349,[3] which provides for an award of attorney's fees to the prevailing party.[4] A potential award of attorney's fees may be considered by the court when determining whether a case involves the jurisdictional minimum. See Ball v. Hershey Foods Corp., 842 F.Supp. 44, 47 (D.Conn.1993) ("Since the court may take attorney's fees into account when determining the amount in controversy, there is a `reasonable possibility' here that the amount in controversy exceeds $50,000.")[5] There is certainly a reasonable probability that the plaintiff's legal fees will exceed $3,400 in pursuing its claim of $46,600, the increment necessary to bring the amount in controversy to the jurisdictional minimum.
Aerolineas Argentinas argues that there is no reasonable probability that the plaintiffs will recover attorney's fees, because § 349 is inapplicable to this case. It argues *129 that § 349 is a deceptive acts or practices consumer protection statute which applies to breach of contract claims only when they relate to a consumer transaction. However, Aerolineas Argentinas has not moved to dismiss the § 349 claim and the mere allegation that a plaintiff is not likely to prevail on a claim is not sufficient to preclude a court from taking that claim into consideration when determining the amount in controversy. See Zacharia, 684 F.2d at 202 ("[E]xistence of a valid defense does not deprive a federal court of jurisdiction.") The Court certainly cannot say to a legal certainty that the plaintiffs cannot recover attorney's fees on their § 349 claim. Cf. In re Wiring Device Antitrust Litigation, 498 F.Supp. 79 (E.D.N.Y. 1980) (Weinstein, J.).
Therefore, the Court possesses diversity jurisdiction over this case.

II.
The Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94-583, 90 Stat. 2891 (1976), codified at 28 U.S.C. §§ 1602-1611, was enacted to clarify the circumstances under which litigants may sue foreign states and their controlled enterprises in the federal courts. See 14 Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure § 3662, at 380-81 (2d ed. 1985). Section 1330(a) of Title 28 of the United States Code, a portion of the Act, provides:
The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement....
28 U.S.C. 1330(a). Aerolineas Argentinas does not presently assert that it is entitled to sovereign immunity under the Act, but that the court lacks jurisdiction under § 1330, because it is not a "foreign state" as defined in § 1603(a), which provides that:
(a) A "foreign state," except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
(b) An "agency or instrumentality of a foreign state" means any entity 
(1) which is a separate legal person, corporate or otherwise, and
(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country....
28 U.S.C. 1603; see Mangattu v. M/V Ibn Hayyan, 35 F.3d 205, 207 (5th Cir.1994) ("In order to qualify for treatment as a foreign state, UASC must meet all three requirements under § 1603(b)."). Aerolineas Argentinas admits that it meets the requirement of § 1603(b)(1), but it contests the applicability of §§ 1603(b)(2) and 1603(b)(3).
Courts have not resolved the question of whether a court is to look to the time of the events allegedly giving rise to liability to determine whether an entity is a "foreign state" under the Act, to the time at which an action is brought, or to either time. Cf. Straub v. A P Green, Inc., 38 F.3d 448, 451 (9th Cir.1994) (holding that "the FSIA applies when a party is a foreign state at the time the lawsuit is filed, even if that party was not a foreign state at the time of the alleged wrongdoing"); Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450 (6th Cir.1988) ("It would appear that the determination of whether a party is subject to the court's jurisdiction under 28 U.S.C. § 1330 should be based upon a party's status at the time the act complained of occurred.") (citations omitted); Morgan Guar. Trust Co. v. Republic of Palau, 639 F.Supp. 706, 712 (S.D.N.Y.1986) (finding that "jurisdictional questions are generally determined as of the date upon which the complaint was filed" and looking to the time the complaint was filed to determine whether defendant was a foreign state), vacated on other grounds, 924 F.2d 1237, 1245 (2d Cir.1991) (holding that defendant *130 was not a "foreign state" at time of transactions giving rise to the action or at the present time).
In any case, the plaintiffs argue that jurisdiction over the claims against Aerolineas Argentinas under the FSIA is proper, regardless of whether the Court looks to the time of the events giving rise to the lawsuit or to the present time in determining the airline's status, because at both times the Argentine Republic and Iberia together owned a majority of its shares, though at the time of the events alleged in the complaint the Argentine Republic owned a plurality of shares and now owns only five percent. The plaintiffs argue that Aerolineas Argentinas is a foreign state under the Act, because 1) Iberia's interest in it is attributable to Spain under the Act; 2) the interests of different foreign states may be pooled in determining whether a majority of the shares of an entity are owned by a foreign state under § 1603(b)(2), and (3) section 1603(b)(3)'s requirement that ownership not be by an entity "created under the laws of any third country" within the meaning of the Act is satisfied by the fact that Aerolineas Argentinas was created under the laws of the Argentine Republic which owns a stake in it. As explained below, Iberia's interest in Aerolineas Argentinas is not attributable to Spain for purposes of meeting the majority of shares ownership requirement of § 1603(b)(2) and, even if it was, this is not a case in which it is permissible to pool the ownership interests of foreign states to meet the majority of shares ownership requirement of § 1603(b)(2). Therefore, the Court lacks jurisdiction over this case under 28 U.S.C. § 1330.
An entity meets the requirements of § 1603(b)(2) by either being a political subdivision or organ of a foreign state or by having a majority of its shares owned by a foreign state or political subdivision. Aerolineas Argentinas is not an organ or political subdivision of a foreign state. The plaintiffs argue that it satisfies the requirements of § 1603(b)(2), because a majority of its shares are owned by Spain, through Iberia, and by the Argentine Republic.
They argue that Iberia's interest in Aerolineas Argentinas is attributable to Spain under the FSIA, because the Act applies to entities owned directly or indirectly by foreign states and Iberia is owned by Spain. The plaintiffs rely on Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445 (6th Cir. 1988), in which the court held that a wholly owned subsidiary of a state owned corporation was a "foreign state." However, Aerolineas Argentinas is not a wholly owned subsidiary of Iberia. In Gates v. Victor Fine Foods, 54 F.3d 1457 (9th Cir.1995), the Court of Appeals for the Ninth Circuit declined to allow indirect ownership by a foreign state or political subdivision to satisfy the requirements of § 1603(b)(2):
As it is written, the Act provides potential immunity to entities that are either organs of a foreign state or political subdivision thereof or have a majority of shares owned by the foreign state or political subdivision. To add to that list entities that are owned by an agency or instrumentality would expand the potential immunity considerably because it would provide potential immunity for every subsidiary in a corporate chain, no matter how far down the line, so long as the first corporation is an organ of the foreign state or political subdivision or has a majority of its shares owned by the foreign state or political subdivision. Although such a broad view of sovereign immunity may very well be desirable, we cannot assume that Congress intended such a result when a literal reading of the statute leads to the opposite conclusion.
Gates, 54 F.3d at 1462. Under Gates, Iberia's interest in Aerolineas Argentinas would not be attributable to Spain, because Iberia is not itself a foreign state or political subdivision. Aerolineas Argentinas would therefore not meet the majority share requirement of § 1603(b)(2) and would not be a foreign state under the Act. The interpretation of the Act and its legislative history set forth by the Court of Appeals for the Ninth Circuit in Gates is straightforward and persuasive. Therefore, Iberia's interest in Argentinas Aerolineas is not that of a foreign state or political subdivision; Aerolineas Argentinas does not meet the requirements of § 1603(b)(2); and the Court does not have *131 jurisdiction over this matter pursuant to 28 U.S.C. § 1330.
Even if Iberia's interest in Aerolineas Argentinas was attributable to Spain, the Court would not possess jurisdiction under the FSIA. The plaintiffs argue that the ownership interests of the Argentine Republic and of Iberia may be pooled to fulfill § 1603(b)(2)'s requirement that a majority of an entity's shares be owned by a foreign state. However, as the court observed in Linton v. Airbus Industrie, 794 F.Supp. 650 (S.D.Tex.1992):
[I]t is far from clear that pooling is allowed under FSIA. To approve pooling, the Court must assume that FSIA applies to entities 50% or more of whose shares are owned by foreign states, even though no single foreign state owns more than 50%. Section 1603, however, speaks only of entities 50% or more of whose shares are owned by a foreign state, singular. Arguably, had Congress wished to permit pooling, it could have easily defined a foreign state as an entity 50% or more of whose shares are owned by a foreign state or states. Because Congress did not so define foreign state, it is not for the courts to substitute this definition for the one provided.
Linton, 794 F.Supp. at 652 (holding that even if pooling of ownership interests is permissible under § 1603(b)(2), the ownership interests of entities may not be pooled unless each such entity is itself a "foreign state" under the Act).
Those cases that have addressed the pooling of ownership interests under § 1603(b)(2) and that have allowed pooling have done so only when the entity in question was created by treaty or was a multinational joint-venture. In such circumstances, there are sufficient indicia that sovereign states are jointly acting in their sovereign capacities through the entity and that the entity should therefore qualify as a sovereign state. For example, in LeDonne v. Gulf Air, Inc., 700 F.Supp. 1400, 1405-06 (E.D.Va.1988), the court held that a corporation established by a treaty and equally co-owned by four nations was a "foreign state" under § 1603 although no single foreign state owned a majority of its shares. The court's finding that the corporation satisfied § 1603(b)(2) was not based upon an interpretation of the statute as allowing for the pooling of ownership interests, but on the fact that the corporation had been created by treaty and was therefore to be presumed to be acting for sovereign and public purposes.[6] Aerolineas Argentinas is not a multi-national joint venture or a treaty created entity and there is no allegation that Iberia's ownership interest in it is for any purpose other than a purely commercial one.[7]
*132 The Court having concluded that Iberia's interest in Aerolineas Argentinas is not attributable to Spain and that the pooling of ownership interests is not permissible in this case, in any event, the question of whether Aerolineas Argentinas is "not created under the laws of any third country" under § 1603(b)(3) is moot.[8]

III.
For the foregoing reasons, the Court lacks subject matter jurisdiction over the claims against Aerolineas Argentinas, S.A. under 28 U.S.C. § 1330, but possesses jurisdiction pursuant to 28 U.S.C. § 1332(a). The motion to dismiss is therefore denied. The matter is referred to Magistrate Judge Francis to set new deadlines for the completion of discovery and the submission of a joint pretrial order.
SO ORDERED.
NOTES
[1] 28 U.S.C. § 1332(a) states, in relevant part, that:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between  ...
(2) citizens of a State and citizens or subjects of a foreign state....
28 U.S.C. § 1332(a).
[2] See Jewell v. Grain Dealers Mut. Ins. Co., 290 F.2d 11 (5th Cir.1961) ("The general rule with respect to the aggregation of the claims of a plaintiff against two or more defendants is that `where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate.") (citations omitted); Smith v. Abbate, 201 F.Supp. 105, 109 (S.D.N.Y.1961).
[3] Section 349 provides in part that:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful....
(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.
N.Y.Gen.Bus.Law § 349(a), (h) (McKinney 1988).
[4] While the statute also provides for punitive damages, those damages are only available to increase an award up to $1,000. See Hart v. Moore, 155 Misc.2d. 203, 207, 587 N.Y.S.2d 477, 480 (Sup.Ct.1992).
[5] See also, Dep't of Rec. and Sports v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir.1991); Foret v. Southern Farm Bureau Life Ins. Co., 918 F.2d 534, 537-38 (5th Cir.1991); Ross v. Inter-Ocean Ins. Co., 693 F.2d 659, 661 (7th Cir.1982); Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1367 (9th Cir.), cert. denied, 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982); Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1168-69 (6th Cir.1975); Hall v. Travelers Ins. Co., 691 F.Supp. 1406, 1409 (N.D.Ga.1988) ("Where, as here, attorney's fees are allowable by applicable law, they may be included in assessing the jurisdictional amount in controversy.") (citation omitted); Schreiber v. Blankfort, 76 F.R.D. 474, 477 (D.Conn.1977) ("[T]he amount recoverable will in large part depend upon the plaintiff's willingness and ability to incur legal fees. Defendants have failed to show the legal certainty required [to dismiss for failure to meet the jurisdictional minimum], therefore subject matter jurisdiction rests with the court on the basis of diversity of citizenship.").
[6] The court noted that, "Courts have held that similar multinational organizations fall within the scope of the FSIA. See, e.g., Rios v. Marshall, 530 F.Supp. 351, 371 (S.D.N.Y.1981) (British West Indies Central Labour Organization, an administrative arm of the Caribbean Regional Labour Board, is an instrumentality of its eleven member states under the FSIA); Int'l Assoc. of Machinists and Aerospace v. OPEC, 477 F.Supp. 553, 568-69 (C.D.Cal.1979) (activities of OPEC in setting crude oil prices were governmental by nature and, therefore, immune under the FSIA)." LeDonne, 700 F.Supp. at 1406 n. 6; see also, Mangattu v. M/V Ibn Hayyan, 35 F.3d at 208 (following LeDonne, "We conclude that UASC is a treaty created instrumentality for purposes of the FSIA. We hold that an entity 100% owned by foreign states, created by an agreement of all the participating states, satisfies the requirements of § 1603(b)(2)."); Aluminum Distributors, Inc., No. 87 C 6477, 1989 WL 64174 (N.D.Ill. June 8, 1989) (following LeDonne and holding that a Bahrainian corporation that was a joint venture owned directly by six Persian Gulf states, none of which had more than a thirty percent interest in it, satisfied the requirements of § 1603(b)(2)).
[7] The legislative history of the FSIA supports allowing the pooling of ownership interests in situations where it is likely that an entity will act for sovereign or public purposes  because it is a treaty created or multinational joint venture  and disallowing pooling in other circumstances. The Act is intended to cover only entities that have some sovereign or public purpose:

The third criterion excludes entities which are citizens of a State of the United States as defined in 28 U.S.C. 1332(c) and (d)  for example a corporation organized and incorporated under the laws of the State of New York but owned by a foreign state.... Also excluded are entities which are created under the laws of third countries. The rationale behind these exclusions is that if a foreign state acquires or establishes a company or other legal entity in a foreign country, such entity is presumptively engaging in activities that are either commercial or private in nature. H.R.Rep. No. 94-1487, 94th Cong., 2nd Sess., at 15 (1976) reprinted in 1976 U.S.C.C.A.N. 6604, 6614; see also, LeDonne, 700 F.Supp. at 1406 ("The rationale of this FSIA exclusion [§ 1603(b)(3)] is the common sense presumption that when a foreign state establishes a company under the laws of yet another foreign state or acquires a company created by another country, the intention is to engage in private commercial activity, not public, non-commercial activity."); Aluminum Distributors, 1989 WL 64174, at *2 (quoting LeDonne).
[8] The plaintiffs argue that, assuming the allowance of pooling, Aerolineas Argentinas is not "created under the laws of any third country" within the meaning of 28 U.S.C. § 1603(b), because an entity should only be excluded from foreign state status under this provision if it was created under the laws of a country that has no ownership interest and the Argentine Republic has always had an ownership interest in Aerolineas Argentinas, an Argentinean corporation. See Mangattu, 35 F.3d at 208; Aluminum Distributors, 1989 WL 64174, at *5; Mobil Corp. v. Abeille General Ins. Co., 1990 WL 504828, at *1 (S.D.Tex.1990); LeDonne, 700 F.Supp. at 1406.