ELIXIR SHIPPING, LTD., Plaintiff,

v.

PERUSAHAAN PERTAMBANGAN MINYAK DAN GAS BUMI NEGARA, Defendant.

No. CIV.A.H–02–0666.

United States District Court,
S.D. Texas,
Houston Division.

March 5, 2003.

---

William A Durham, Eastham Watson et al, Houston, for Elixir Shipping SA, plaintiff.

John M Elsley, Attorney at Law, Houston, for Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, defendant.

### MEMORANDUM AND ORDER

WERLEIN, District Judge.

Pending is Defendant Perusahaan Pertambangan Minyak Dan Gas Bumi Negara's ("Pertamina") Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(2) and, Subject Thereto, its Motion to Dismiss Based on Forum Non Conveniens (Document No. 12). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

### I. *Background*

Plaintiff Elixir Shipping, Ltd. ("Elixir Shipping"), an entity organized and existing under the laws of Malta, alleges that its vessel, the M/V ELIXIR ("ELIXIR"), was struck by the M/T SELE/PERTAMINA 3006 ("SELE") in Indonesian waters. The collision resulted in extensive damage to the ELIXIR and substantial economic loss to Elixir Shipping. Elixir Shipping claims that the collision and resulting dam-

ages to the ELIXIR were caused by the negligence of Pertamina, its employees, servants and agents, including the master crew aboard the SELE. Pertamina moves to dismiss Elixir Shipping's claim based on lack of subject matter jurisdiction, personal jurisdiction and, alternatively, forum non conveniens.

### II. *Rule 12(b)(1) Standard of Review*

Fed.R.Civ.P. 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990); *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981); *Santerre v. Agip Petroleum Co.,* 45 F.Supp.2d 558, 566 (S.D.Tex.1999). A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings. *See Lawrence,* 919 F.2d at 1529; *Paterson,* 644 F.2d at 523. When accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack. *Paterson,* 644 F.2d at 523. Because Defendant has submitted supporting evidence with its motion, its challenge to the Court's jurisdiction is factual.

### III. *Discussion*

The Foreign Sovereign Immunity Act ("FSIA") sets forth the sole and exclusive standards to be used in resolving all foreign sovereign immunity issues. *See* 28 U.S.C. § 1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter."). *See also Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 845 (5th Cir.2000); *Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 532 (5th Cir.1992).

Section 1604 of the FSIA provides that "... a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Federal district courts have original jurisdiction over non-jury civil actions against "a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). Furthermore, "personal jurisdiction over a foreign state shall exist to every claim for relief over which the district courts have jurisdiction under [§ 1330](a) where service has been made under [28 U.S.C. § ] 1608." 28 U.S.C. § 1330(b). Thus, "personal jurisdiction, like subject-matter jurisdiction, exists only when one of the exceptions to foreign sovereign immunity in §§ 1605–1607 applies." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 688 n. 3, 102 L.Ed.2d 818 (1989). *See also Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983) ("Under the [FSIA], ... both statutory subject-matter jurisdiction ... and personal jurisdiction turn on application of the substantive provisions of the [FSIA]").

■ Section 1604 of the FSIA provides that a foreign state, subject to existing international agreements to which the United States is a party, shall be immune from jurisdiction of the Courts of the United States except as provided by sections 1605 to 1607. 28 U.S.C. § 1604. A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in [§ 1603](b)." 28 U.S.C. § 1603(a). In addition, an "agency or instrumentality of a foreign state" is defined as:

[A]ny entity ... which is a separate legal person ... and ... a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and which is neither a citizen of a State of the United States ... nor created under the laws of any third country.

28 U.S.C. § 1603(b). *See Kelly*, 213 F.3d at 846; *Mangattu v. M/V Ibn Hayyan*, 35 F.3d 205, 207 (5th Cir.1994). Mr. Ronald P. Gultom, General Manager Commercial and Charter for Pertamina, states in his unsworn declaration made under penalty of perjury that Pertamina is a separate legal person which is "wholly owned by the Sovereign State of Indonesia ... and is neither a citizen of a State of the United States nor created under the laws of any third country." Document No. 12 ex. A, at 2. *See also Karaha Bodas Co. L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, No. H–01–0634 (Document No. 45) (S.D.Tex. November 30, 2001) (Atlas, J.) ("Pertamina is an oil and gas corporation owned by the Government of the Republic of Indonesia ..."). Pertamina has carried its burden in establishing that it is an "agency or instrumentality of a foreign state" for purposes of the FSIA.

A district court has subject matter jurisdiction in an action against a foreign sovereign under the FSIA only if an exception to sovereign immunity applies. *See* 28 U.S.C. § 1330(a). The FSIA recognizes a "commercial activities exception," whereby foreign states are not immune from judicial process in any case in which the action is based upon commercial activity as set forth in section 1605(a)(2). Section 1605(a)(2) identifies three types of acts that are sufficiently connected to the United States to satisfy the requirement of the commercial activities exception:

   (1) A commercial activity carried on in the United States;

(2) An act performed in the United States in connection with a commercial activity carried on outside the United States; and

(3) A commercial activity carried on outside the United States that causes a direct effect in the United States.

*See* 28 U.S.C. § 1605(a)(2); *Stena Rederi AB v. Comision de Contratos del Comite,* 923 F.2d 380, 386 (5th Cir.1991); *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1110 (5th Cir.1985).

■ For any of the three types of acts identified in Section 1605(a)(2) to apply, the Fifth Circuit requires a nexus between the underlying claim and the commercial activity in (or having a direct effect in) the United States. *See Tubular Inspectors, Inc. v. Petroleos Mexicanos,* 977 F.2d 180, 184 (5th Cir.1992); *Stena Rederi,* 923 F.2d at 386–87; *Vencedora Oceanica Navigacion v. Compagnie Nationale Algerienne De Navigation,* 730 F.2d 195, 202–204 (5th Cir.1984). There must be a nexus between the entity's commercial activity in the United States and the event giving rise to the underlying lawsuit in order for a district court to exercise subject matter jurisdiction. *Id.* at 203 (quoting *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1373 (5th Cir.1980)) ("[t]he focus of the exception to the immunity recognized in § 1605(a)(2) is ... *on whether the particular conduct giving rise to the claim in question actually constitutes or is connection with* commercial activity ....") (emphasis in quotation). In *Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 533 (5th Cir.1992), the Fifth Circuit explained further:

> Section 1605(a)(2) also requires that there be a material connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign. *Stena [Rederi AB v. Comision de Contratos del Comite,* 923 F.2d 380 (5th

Cir.1991)] *id.* at 386–87. Thus, "[i]n order to satisfy the commercial activities exception to sovereign immunity, the commercial activity that provides the jurisdictional nexus with the United States must also be the activity on which the lawsuit is based." *Id.* at 387. Isolated or unrelated commercial actions by a foreign sovereign in the United States do not authorize the exception. *Id. See also de Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385, 1391 (5th Cir. 1985).

■ Plaintiff Elixir Shipping in its amended complaint alleges no jurisdictional facts other than "Pertamina is a foreign corporation who maintains an office and *conducts business* within the Southern District of Texas at its location of business, Pertamina Oil & Gas Co., 1360 Post Oak Boulevard, Suite 1590, Houston, Texas 77056." Document No. 3, at 2 (emphasis added). The uncontroverted evidence is that at the time of the collision, Pertamina did maintain a small branch office in Houston, which was subsequently closed. The office served as Pertamina's liaison office with offshore contractors who render services to Pertamina in connection with Pertamina's development of its offshore oil reserves. The Pertamina branch office in Houston conducted no activities with respect to the SELE, or with respect to any of Pertamina's fleet of ships. Merely pleading that a foreign instrumentality is "doing business" in the United States is not enough to trigger the application of the commercial activities exception to immunity under Section 1605(a)(2). *Vencedora,* 730 F.2d at 202.

Elixir Shipping's negligence claim is based upon Pertamina's "commercial activity" that occurred outside the United States and that is wholly unconnected to Pertamina's commercial activity in the United States. All of Pertamina's shore-

based ship-related operations were conducted from Pertamina's offices in Indonesia. Pertamina's vessels have not called at United States ports in over fifteen (15) years. *See, e.g., Vencedora,* 730 F.2d at 199 (finding that no nexus existed between the defendant's vessels' frequent calls to U.S. ports and the plaintiff's claim for loss of its vessel, and holding that the defendant, an agency of the Algerian government, was therefore immune from jurisdiction of the court under the FSIA). Indeed, Pertamina's vessels trade only within the Indonesian Archipelago. Furthermore, the SELE collided with the ELIXIR in Indonesian waters under circumstances bearing no connection to the United States. None of the crew members was American and neither ship carried U.S.-bound cargo at the time of the collision. Therefore, there is no material connection to Pertamina in the United States, including its former Houston office, which office had *no activity relating to the operation or management of the* SELE.

■ In its Response, Elixir Shipping fails to establish a jurisdictional nexus with the United States based "on the [commercial] activity on which the lawsuit is based." *See Arriba Ltd.,* 962 F.2d at 533, quoting *Stena,* 923 F.2d at 387. Elixir Shipping argues that Pertamina is subject to the jurisdiction of the Courts of the United States under § 1605(a)(2) because its commercial activity carried on outside the United States caused "a direct effect in the United States," but makes no claim that *Plaintiff* Elixir Shipping suffered any "direct effect." Instead, Elixir Shipping argues that a "direct effect" was felt in the United States by unrelated American insurance companies that were underwriters of 64% of the reinsurance that had been procured by The Swedish Club, a Swedish entity from which Elixir Shipping had ac-

quired its hull and machinery policy on the ELIXIR. Elixir Shipping's evidence is that The Swedish Club wrote a 100% line on the hull and machinery policy purchased by Elixir Shipping, which policy was sufficient to cover the damages and losses suffered by the ELIXIR/ Elixir Shipping Ltd. as a result of the collision with the SELE. The Swedish Club itself, which is not a party to this suit, chose to purchase reinsurance "on Hull and Machinery policies that it wrote for claims on the policies in excess of Two Million U.S. Dollars (US$2,000,000.00)," and 64% of the reinsurance policy was placed with American insurance companies. None of these American insurance companies is named, and none is a party to this suit. Moreover, the reinsurance policy is not in evidence. More importantly, none of this commercial reinsurance activity that occurred in Sweden and possibly elsewhere was instigated by Plaintiff Elixir Shipping or by Defendant Pertamina, and none of it had anything to do with Pertamina's commercial activity in Indonesian waters.

Nonetheless, it was The Swedish Club's commercial activity to acquire reinsurance on certain hull and machinery insurance policies that it had written, a portion of which was placed with American underwriters, that leads Plaintiff to contend that Pertamina's commercial activity in Indonesian waters had a "direct effect" in the United States. It is obvious that Pertamina's commercial activity outside of the United States had nothing to do with Elixir Shipping's decision to purchase hull and machinery insurance from The Swedish Club. Likewise, Pertamina's commercial activity in Indonesian waters on the occasion in question had nothing to do with The Swedish Club's previous decision to acquire certain levels of reinsurance on a book of hull and machinery policies that it had sold, of which 64% of the reinsurance happened to be placed with American in-

surance companies. In short, the collision between two foreign ships in Indonesian waters had no "direct effect" in the United States within the meaning of § 1605(a)(2) notwithstanding the fact that certain unnamed American insurance companies may have some potential liability on a reinsurance policy that they helped to underwrite to The Swedish Club which, in turn, had issued one of its hull and machinery policies to Elixir Shipping.

The Supreme Court has made clear that an effect is "direct" if it follows as an immediate consequence of the defendant's activity. *Republic of Argentina v. Weltover,* 504 U.S. 607, 112 S.Ct. 2160, 2168, 119 L.Ed.2d 394 (1992). Thus, there was a "direct effect" in the United States when defendant Argentina unilaterally rescheduled interest payments on certain commercial instruments that it was obligated to pay into bank accounts designated by plaintiff in New York: "Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id. See also Voest–Alpine Trading USA Corp. v. Bank of China,* 142 F.3d 887, 897 (5th Cir.1998), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 591, 142 L.Ed.2d 534 (1998), ("[T]he Bank of China's failure to pay on the letter of credit caused a direct effect in the United States, that is, Voest–Alpine's non-receipt of funds in its Texas

bank account followed as an immediate consequence of the Bank of China's actions."). Here, Pertamina's commercial activity in Indonesian waters had no direct effect whatever in the United States upon Plaintiff Elixir Shipping.[1] The fact that Elixir Shipping's non-party Swedish insurer happened to have acquired reinsurance on some of its policies, and that 64% of that reinsurance was underwritten by non-party, unnamed American insurers that possibly may incur a liability on their underwriting, is not an "immediate, direct effect" of *Pertamina's* commercial activity. Moreover, as first observed, Pertamina's activity upon which Elixir Shipping's lawsuit is based, namely, Pertamina's commercial shipping activity and the collision in Indonesian waters, has no jurisdictional nexus to the United States.[2]

Elixir Shipping also argues that Pertamina implicitly waived its immunity under the FSIA by filing suit in Singapore for damages suffered as a result of the collision between the ELIXIR and the SELE. Elixir Shipping claims that "the legislative history of the FSIA indicates that submitting to the laws of another country constitutes an implied waiver of sovereign immunity," citing *Ipitrade Int'l, S.A. v. Fed. Republic of Nig.,* 465 F.Supp. 824, 826 (D.D.C.1978). Document No. 20, at 8.

1. The "relevant inquiry under the direct effect clause when plaintiff is a corporation is whether the corporation has suffered a 'direct' financial loss." *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 312 (2d. Cir.1981). The Fifth Circuit in *Voest–Alpine Trading U.S.A. Corp. v. Bank of China,* 142 F.3d 887, 896 (5th Cir.1998), held that for jurisdiction under the "direct effects" clause, a "non-trivial effect" in the United States need only be "an immediate consequence of the foreign state's activity." *Id.* There was no direct effect in the United States upon Elixir Shipping from the collision that is the subject of this case. Plaintiff Elixir Shipping is a Maltese Company, the ELIXIR is

managed by a Greek company, the ELIXIR flies the flag of Malta, and the ELIXIR is registered in Malta.

2. Given the Court's conclusion on this point, Elixir Shipping requests that Pertamina be compelled to respond to propounded discovery in hopes that further answers will establish that Pertamina is not an agency or instrumentality of Indonesia. After having reviewed Plaintiff's propounded discovery questions, the answers and objections filed by Pertamina, and the other evidence of record, that request is DENIED.

The FSIA allows a foreign state to waive its immunity either "explicitly or by implication." 28 U.S.C. § 1605(a)(1).[3] The Fifth Circuit has held, based on the legislative history of the FSIA, that an implicit waiver is ordinarily found in one of only three situations: (1) a foreign state agrees to arbitration in another country; (2) a foreign state agrees that a contract is governed by the laws of a particular country; (3) the state files a responsive pleading without raising the immunity defense. *Rodriguez v. Transnave, Inc.*, 8 F.3d 284, 287 (5th Cir.1993). "The implicit waiver clause of section 1605(a)(1) has ... been narrowly construed; courts rarely find that a nation has waived its sovereign immunity without strong evidence that this is what the foreign state intended." *Id.*

Elixir Shipping argues that in accordance with *Ipitrade*, this Court should find that Pertamina implicitly waived its sovereign immunity. *Ipitrade*, however, did not involve the filing of a suit in a foreign country, but rather involved an instance where a foreign government *agreed to arbitrate* in the territory of a State that had signed the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and where the foreign government was also a signatory to the Convention. 465 F.Supp. at 826 (emphasis added). In so doing, the court held that the foreign government implicitly waived sovereign immunity under the FSIA by agreeing to arbitrate in accordance with the Convention. *Id.* The District of Columbia Circuit Court of Appeals subsequently clarified *Ipitrade*, noting that implicit waiver was found because the foreign signatory therefore contemplated an enforcement in other signatory States, including the United States. *See Creighton*

*Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123 (D.C.Cir.1999) (distinguishing *Ipitrade* on this basis, and noting that "when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory state must have contemplated enforcement actions in other signatory states."). As the *Creighton* court observed, in order for a court to find an implicit waiver, the foreign sovereign must intend to waive immunity *in the United States. Id.* at 122 (emphasis added). *See also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377, 377 n. 10 (7th Cir.985) (observing that "most courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States," and noting "[t]he only case to the contrary, *Ipitrade*, has never been followed.") (internal citation omitted).

In *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 523–24 (9th Cir.2001), the Ninth Circuit affirmed the district court's rejection of the argument that a sovereign's submission to litigation in another country constitutes an implied waiver of sovereign immunity. In *Corzo*, the district court stated that "submission of a foreign sovereign to its own courts or the courts of nations other than the United States does not by itself evidence an intent by the foreign sovereign to waive its immunity from suit in the United States." *Id.* at 523. The Ninth Circuit affirmed, concluding that "[s]ubmitting to jurisdiction in the courts of one nation should in no way put a foreign sovereign on notice that it has thereby subjected itself to personal jurisdiction in the United States." *Id.* at 523–24.

Pertamina has satisfied none of the three conditions for implicit waiver an-

---

**3.** Elixir Shipping's waiver argument is based solely on the grounds of implicit waiver; it does not argue that Pertamina *explicitly* waived its immunity under 28 U.S.C. § 1605(a)(1).

nounced by the Fifth Circuit in *Rodriguez,* nor is there any evidence, much less "strong evidence," that Pertamina intended to waive immunity from suit in the United States by filing a suit in Singapore. Accordingly, the Court finds that Pertamina has not waived its sovereign immunity under the FSIA.

### IV. *Order*

Based on the foregoing, it is

ORDERED that Defendant Perusahaan Pertambangan Minyak Dan Gas Bumi Negara's ("Pertamina") Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(2) (Document No. 12) is GRANTED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.