BANCO DE SEGUROS DEL ESTADO, Plaintiff–Appellant,

v.

MUTUAL MARINE OFFICE, INC. and Mt. McKinley Insurance Company, as successor of the Gibraltar Casualty Company, Defendants–Appellees,

Docket Nos. 02–9173, 02–9354.

United States Court of Appeals, Second Circuit.

Argued: June 16, 2003.

Decided: Sept. 18, 2003.

David A. Cobin, Of Counsel, Law Office of Jorge W. Moreira, New York, New York, (Jorge W. Moreira, David A. Cobin, Angelo D. Tartaro, and Scott Zarin, on the brief) for Plaintiff–Appellant.

Daniel Hargraves and James D. McConnell, Jr., Hargraves, McConnell & Costigan, P.C., New York, New York, for Defendant–Appellee Mutual Marine Office, Inc.

Edward K. Lenci, Wilker & Lenci, LLP, New York, New York, for Defendant–Appellee Mt. McKinley Insurance Co.

Before: McLAUGHLIN, LEVAL and RAGGI, Circuit Judges.

MCLAUGHLIN, Circuit Judge.

This consolidated appeal arises out of two separate reinsurance arbitrations. Banco de Seguros del Estado ("Banco"), a

reinsurance corporation wholly owned by the Government of Uruguay, entered into two separate Casualty Umbrella Liability Quota Share Agreements ("Umbrella Agreements") with Mutual Marine Offices, Inc. ("MMO") and Mount McKinley Insurance Co. ("McKinley"), corporations in the insurance and reinsurance business. MMO and McKinley separately commenced arbitration proceedings claiming that Banco failed to comply with its contractual obligations under the Umbrella Agreements.

In each case, an arbitration panel (the "Panel") granted defendants' motions to require Banco to post pre-hearing security pending a final determination by the Panel. Banco moved to vacate both interim orders in the United States District Court for the Southern District of New York (Scheindlin, *J.*) and (Pauley, *J.*). The district courts in both cases confirmed the interim orders.

On appeal, Banco claims that as a wholly-owned foreign corporation it is protected from a pre-hearing security order by Foreign Sovereign Immunities Act ("FSIA"). Banco argues that in awarding pre-hearing security, the MMO and McKinley Panels: (1) exceeded their authority; (2) acted in manifest disregard of the law; (3) offended public policy; and (4) violated fundamental fairness.

We need not decide today whether the FSIA applies to arbitration proceedings. Instead, we will assume arguendo that it does. Even so, we find that Banco explicitly waived its immunity to the posting of pre-hearing security in the Umbrella Agreements. We therefore affirm both district courts.

## BACKGROUND

Banco is a reinsurance corporation wholly owned by the Government of Uruguay.

This consolidated appeal involves two distinct reinsurance arbitrations.

Banco was a party to two separate Umbrella Agreements, one with MMO and the other with McKinley. The Umbrella Agreements were reinsurance contracts in which Banco agreed to be responsible for a percentage of MMO and McKinley's net liability on certain policies. Each Umbrella Agreement contained substantially identical terms, including an arbitration clause.

The arbitration clause provided that "any dispute" must be referred to arbitration and that "[t]he arbitrators shall consider this Treaty an honourable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law." The clause also provided that "[t]he decision in writing of any two arbitrators ... shall be final and binding on both parties."

Another clause in the Umbrella Agreement provided that Banco must "apply for and secure delivery to [MMO] a clean irrevocable Letter of Credit issued by a bank acceptable to such Insurance Department in an amount equal to [Banco's] proportion of said reserves." Banco never furnished the Letter of Credit.

MMO and McKinley started separate arbitration proceedings claiming that Banco failed to comply with its obligations under the Umbrella Agreement. In both cases, there was an Organizational Meeting, after which the Panels issued interim orders requiring Banco to post pre-hearing security.

### A. *The Mutual Marine Arbitration (Scheindlin, J.)*

Before the Organizational Meeting, the Panel ordered the parties to exchange brief position statements. MMO notified the Panel that it would make a pre-hearing

motion seeking security and submitted its Statement of Position one week before the Meeting. MMO argued that: (1) such security was required under New York Insurance Law § 1213; (2) the security was also required by the Umbrella Agreement; and (3) unless there were a provision precluding security, the arbitrators had the inherent power to order such relief.

Banco's Statement of Position posited that, as an instrumentality of a foreign state, it was immune under the FSIA from having to post pre-hearing security. It claimed that such immunity could only be waived by an explicit contractual provision, and requested the Panel to withhold any determination on MMO's claim for prehearing security until after the parties had an opportunity to engage in discovery and to present their evidence at a hearing.

At the Organizational Meeting, the Panel heard the parties' arguments and ruled that it was authorized under the Umbrella Agreement to order pre-hearing security. It instructed the parties to confer about the proper amount of that security.

After receiving documents reflecting the sums MMO claimed were due and after conducting a telephone conference, the Panel issued an interim order directing Banco to post as security an irrevocable letter of credit for $708,714.04. Banco moved for reconsideration. The Panel denied Banco's motion in a second interim order.

Banco then moved to vacate the Panel's interim orders in the United States District Court for the Southern District of New York (Scheindlin, J.). The district court, as a threshold issue and a matter of first impression, determined that the Panel's interim orders constituted "arbitral awards" and were therefore reviewable. The court denied Banco's motion, finding that the Panel did not act in manifest disregard of the law or exceed the scope of its authority by awarding pre-hearing security. *See Banco de Seguros del Estado v. Mutual Marine Offices, Inc.*, 230 F.Supp.2d 362, 371–75 (S.D.N.Y.2002) (*"Banco I"*).

Banco moved before Judge Scheindlin for reconsideration asserting that: (1) the court should have employed a *de novo* standard in reviewing the arbitral awards; (2) the arbitration award was against public policy; (3) the court erred in finding that the panel did not act in manifest disregard of the law; and (4) the Panel erroneously relied on the terms of the Umbrella Agreement in finding that Banco was required to post pre-hearing security.

The district court granted the motion to reconsider solely because it had overlooked Banco's public policy argument raised on the initial motion. The district court then found that: (1) the standard of review was proper; (2) Banco did not cite any controlling authority or any factual matter overlooked by the court when it determined that the Panel did not act in manifest disregard of the law; and (3) even if the Umbrella Agreements did not expressly provide for an award of pre-hearing security, case law cited to the Panel provided an adequate basis to confirm the interim orders. *Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.*, 230 F.Supp.2d 427, 429–30, 431–32 (S.D.N.Y. 2002) (*"Banco II"*). Finally, the district court found that, although Banco identified an "explicit public policy," it failed to show how enforcing the arbitral award "explicitly conflicts" with that public policy. *Id.* at 431.

### B. *The Mt. McKinley Arbitration (Pauley, J.)*

Pursuant to a different Umbrella Agreement, but under circumstances mirroring those with MMO, Mt. McKinley brought

an arbitration proceeding against Banco claiming it failed to comply with its contractual obligations. At the Panel's Organizational Meeting, McKinley made a motion to compel Banco to post pre-hearing security. Banco—as it did in the MMO arbitration—opposed the motion, claiming to be immune from pre-hearing security under the FSIA. Subsequently, the Panel directed Banco to post an irrevocable letter of credit for $278,238.96.

Banco moved in the United States District Court for the Southern District of New York (Pauley, *J.*) to vacate the Panel's interim order requiring Banco to post pre-hearing security. The district court denied the motion, citing the MMO Opinion and Order.

Banco now appeals both district court judgments.

## DISCUSSION

### I. *Standard of Review*

■ In reviewing a district court's confirmation of an arbitral award, we review legal issues *de novo* and findings of fact for clear error. *Pike v. Freeman,* 266 F.3d 78, 86 (2d Cir.2001).

■ The scope of the district court's review of an arbitral award is limited. *See Sperry Int'l Trade, Inc. v. Gov't of Israel,* 689 F.2d 301, 304 (2d Cir.1982). "[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union, AFL–CIO,* 954 F.2d 794, 797 (2d Cir.1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir.1978)).

### II. *The Foreign Sovereign Immunities Act*

Banco asserts that, as an instrumentality of a foreign state, it is immune from posting pre-hearing security under the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1330(a), 1441(d), 1602–1611. We disagree.

The FSIA is designed to "protect the rights of both foreign states and litigants *in United States courts.*" 28 U.S.C. § 1602 (emphasis added). It "sets forth the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states *before Federal and State courts in the United States.*" H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6610 (emphasis added).

The language of the statute and its legislative history do not suggest that the FSIA was intended to apply to private commercial arbitration. We need not decide this issue, however, because Banco expressly waived any immunity it may have enjoyed to an award of pre-hearing security.

### III. *Immunity to Prejudgment Attachment Under FSIA*

■ Section 1609 of the FSIA states: "Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment[,] arrest and execution except as provided in sections 1610 and 1611 of this chapter." 28 U.S.C. § 1609. In *Stephens v. Nat'l Distillers and Chem. Corp.,* 69 F.3d 1226 (2d Cir.1995), we held that the posting of security required under New York Insurance Law § 1213(c) constituted the functional equivalent of a prejudgment attachment from which foreign sovereigns were immune. *Id.* at 1229, 1230.

Foreign states are immune from prejudgment attachment of their assets used for commercial activity in the United States, unless "the foreign state has *explicitly waived* its immunity from attachment prior to judgment . . . ." 28 U.S.C. § 1610(d)(1) (emphasis added).

Section 1610(d) does not require recitation of "the precise words 'prejudgment attachment' in order to waive immunity." *S & S Mach. Co. v. Masinexportimport,* 706 F.2d 411, 416 (2d Cir.1983) (citing *Libra Bank Ltd. v. Banco Nacional de Costa Rica,* 676 F.2d 47, 49–50 (2d Cir.1982)). Rather, a waiver of immunity from prejudgment attachment must be explicit in the common sense meaning of that word: "the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country." *Id.* at 416.

In *Libra Bank,* the defendant, a Costa Rican bank, issued four promissory notes, each waiving "any right or immunity from legal proceedings including suit judgment and execution on grounds of sovereignty . . . ." 676 F.2d at 49. This was held to be an explicit waiver of immunity under § 1610(d) because, although the words "prejudgment attachment" were not mentioned, the waiver demonstrated a "clear and unambiguous intent to waive all claims of immunity in all legal proceedings." *Id.*

In contrast, in *S & S Mach. Co.,* a statement in a trade agreement prohibiting State owned parties from claiming or enjoying "immunities from suit or execution of judgment or other liability . . ." was *not* a waiver of immunity from prejudgment attachment under § 1610(d). 706 F.2d at 417. We found that the waiver of immunity from suit and execution had no bearing on the issue of prejudgment attachment. *Id.* We also held that immunity

from "other liability" was "ill-suited to encompass prejudgment attachments." *Id.*

The arbitration clause of both Umbrella Agreements at issue provided that "[t]he arbitrators shall consider this Treaty an honourable engagement rather than merely a legal obligation; they are *relieved of all judicial formalities* and may *abstain from following the strict rules of law.*" (emphasis added). Courts have read such clauses generously, consistently finding that arbitrators have wide discretion to order remedies they deem appropriate.

In *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.,* 935 F.2d 1019 (9th Cir.1991), the Ninth Circuit held that an arbitral panel may order pre-hearing security in the form of an escrow account where the arbitration clause states, as here, that the arbitrators are "relieved of all judicial formalities and may abstain from following the strict rules of law." *Id.* at 1025. Several district courts have agreed that such language confers a wide spectrum of powers on arbitral panels, including the power to award pre-hearing security. *See, e.g., British Ins. Co. of Cayman v. Water St. Ins. Co.,* 93 F.Supp.2d 506, 516 (S.D.N.Y. 2000) (citations omitted) (confirming an arbitration panel's interim order requiring reinsurer to post security before arbitration hearing); *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co. Ltd.,* 96 Civ. 7269, 1997 WL 357989, at *7, 1997 U.S. Dist. LEXIS 8916, at *25 (S.D.N.Y. June 26, 1997) (reading such language as enabling arbitrators to be "free to disregard New York substantive law").

Concededly, the arbitration clause here did not explicitly authorize the arbitrator to order a letter of credit as security against a possible final award. However, in a separate clause of the Umbrella Agreement, titled "Unearned Premium and Loss Reserves," Banco agreed to "apply for and secure delivery to [MMO] a

clean irrevocable Letter of Credit issued by a bank acceptable to such Insurance Department in an amount equal to [Banco's] proportion of said reserves." [A–36] This clause inarguably demonstrates that the parties embraced "the usefulness of letters of credit as the means of securing their respective rights and obligations and as a means of facilitating the transaction generally." *Yasuda Fire & Marine Ins. Co. of Europe Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 350 (7th Cir.1994).

As such, even if the FSIA applied to arbitration—which we do not decide—we find that the Umbrella Agreements satisfied the explicit waiver requirement of § 1610(d).

## IV. *Remaining Claims*

We find Banco's remaining claims that the MMO and McKinley Panels: (1) exceeded their authority; (2) acted in manifest disregard of the law; (3) offended public policy; and (4) violated fundamental fairness, without merit.

### A. *Exceeding Authority*

■ The Federal Arbitration Act ("FAA") permits vacatur of an arbitral award where the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4). We have "consistently accorded the narrowest of readings" to the FAA's authorization to vacate awards pursuant to § 10(a)(4). *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir.2002) (citation omitted). Our inquiry "focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Id.* at 220 (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir.1997)). We must determine "whether the arbitrator[s] acted within the scope of [their] authority," or

whether the arbitral award is merely the "arbitrator[s'] own brand of justice." *Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir.1992).

■ Where an arbitration clause is broad, as here, arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself. *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted) (stating that arbitrators must not be allowed to "impose obligations outside the contract"); *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301, 306 (2d Cir.1982) (stating that, under New York Law, arbitrators are not constrained by the strict rules of the courts and may order relief that a court would not, or could not, grant); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir.1988) (stating that if arbitrators have jurisdiction over a matter, "any subsequent construction of the contract and of the parties' rights and obligations under it" is for the arbitrators to decide (citation omitted)).

■ It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting an arbitral security award that ensures a meaningful final award. *See Yasuda*, 37 F.3d at 348 (allowing arbitrators to order pre-hearing security in the form of a letter of credit); *Pac. Reins. Mgmt. Corp.*, 935 F.2d at 1025 (allowing arbitrators to order pre-hearing security in the form of an escrow account); *Island Creek Coal Sales Co. v. City of Gainesville, Florida*, 729 F.2d 1046, 1049 (6th Cir.1984) (finding that where the contract did not preclude equitable relief, "[t]he arbitrator may grant any remedy or relief which the arbitrator deems just and equitable and within the

scope of the agreement of the parties") (citing AAA Commercial Arbitration Rule 43).

There is little doubt that the parties expected the Panel to rule on the issue of pre-hearing security. It was listed as an agenda item for the Organizational Meeting with the Panel; it was fully briefed and was orally debated by both parties.

It is not without significance that the arbitrators were "relieved of all judicial formalities and may abstain from following the strict rules of law," and that the Umbrella Agreements do not preclude the posting of security, and, indeed, contain a clause requiring Banco to post a Letter of Credit. We can hardly conclude that the posting of pre-hearing security represented the Panels' "own brand of justice." *Brooks Drug Co.*, 956 F.2d at 25.

## B. *Manifest Disregard of Law*

▉▉▉▉▉ Banco also contends that the MMO and McKinley Panels acted in manifest disregard of the law by ordering it to post pre-hearing security. We disagree. We review *de novo* a district court's application of the judicially created doctrine of "manifest disregard of law." *Westerbeke*, 304 F.3d at 208 n. 7.

▉▉▉▉ A court will vacate an arbitral award on this ground only if "a reviewing court ... find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000) (citation omitted).

The appellant repeatedly emphasizes our holding in *Stephens v. Nat'l Distillers and Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995). Its faith is misplaced. *Stephens* dealt with prejudgment security in the context of litigation, not arbitration. *See id.* at 1230. It found that immunity under the FSIA should apply broadly in federal litigation and held that the posting of security required under New York Insurance Law § 1213(c) constituted a prejudgment attachment from which foreign sovereigns were immune. *Id.* at 1229, 1230. In doing so, *Stephens* wrestled with a crucial distinction suggested earlier in *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 689 F.2d 301 (2d Cir.1982).

In *Sperry* we affirmed an arbitration award that ordered the parties to place the proceeds of a disputed Letter of Credit in a joint escrow account pending a final determination. We volunteered, in a footnote, that "the arbitrators' award is an in personam order, not an attachment order of the sort prohibited by § 1609." *Id.* at 305 n. 7. *Stephens* eliminated this laconic distinction, but, significantly, did not disavow the outcome in *Sperry* allowing the arbitration panel's escrow award to stand. *See Stephens*, 69 F.3d at 1230; *see also Skandia Am. Reins. Corp. v. Caja Nacional de Ahorro y Segoro*, No. 96 Civ. 2301, 1997 WL 278054, at *4 (S.D.N.Y. May 23, 1997) (rejecting argument that defendant could not be required to post prejudgment security in an arbitration because *Stephens* "did not involve an arbitration action").

In addition to distinguishing *Stephens*, the district court below cited several cases that justified the Panels' inference that pre-hearing security could lawfully be imposed. *See Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, No. 00 C 6703, 2001 WL 322005 (N.D.Ill. April 2, 2001) (finding that Argentina, by signing the Convention on the Recognition Enforcement of Foreign Arbitral Awards (the "New York Convention"), waived its immunity to prejudgment security ordered by a district court while it is reviewing an arbitral award

(which is permitted under the New York Convention)); *Skandia,* 1997 WL 278054, at \*1–\*2 (same); *see also Home Ins. Co. v. Banco de Seguros del Estado,* 98 Civ. 6022 1999 U.S. Dist. LEXIS 22478, at \*20–21 (S.D.N.Y. Feb. 26, 1999) (confirming an arbitration panel's interim order requiring Banco to establish an escrow account to secure any eventual arbitral award).

In any event, it can hardly be said that the FSIA clearly prohibits the relief ordered by the Panels. The Panels, therefore, did not ignore or refuse to apply "well defined, explicit, and clearly applicable" law, *Greenberg,* 220 F.3d at 28, and, as such, did not act in manifest disregard of the law.

## C. *Public Policy*

■ Banco claims that the arbitrators' awards of prejudgment security violates public policy. We are not persuaded.

The FSIA specifically states that it is "[s]ubject to existing international agreements." 28 U.S.C. § 1609. The New York Convention, to which both Uruguay and the United States are signatories, was in existence at the time the FSIA was enacted. And it applies here. 9 U.S.C. § 201.

■ The New York Convention empowers a court to deny "[t]he recognition or enforcement of the award [when it] would be contrary to the public policy of that country." New York Convention, art. V(2)(b). A court's power to invoke public policy to reject an arbitral award "is limited to situations where the contract as interpreted [by the arbitrators] would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworks Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct.

364, 98 L.Ed.2d 286 (1987) (quotation marks and citations omitted).

The district court found that Banco correctly identified an "explicit public policy." *Banco II,* 230 F.Supp.2d at 430. However, the district court correctly found that the Panels' interim orders did not "explicitly conflict" with law and legal precedent. *Id.* We agree with the district court that Banco has simply recycled its contention that the Panels acted in manifest disregard of the law, this time as a public policy claim. *Id.* at 430–31. Both arguments are rejected.

## D. *Fundamental Fairness*

■ "[A]n appellate court will not consider an issue raised for the first time on appeal." *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 67 n. 5 (2d Cir.2002). Banco did not raise the issue of fundamental unfairness below and is not permitted to raise it now on appeal. See *Banco I,* 230 F.Supp.2d at 372 n. 12 ("Notably ... Banco has not argued here that the Panel's decision to deny this request deprived it of 'fundamental fairness.'"). Even if Banco were permitted to raise the issue, the deferential standard of review applied to arbitration decisions prevents reversal.

## CONCLUSION

For the reasons stated herein, we AF-FIRM the judgments of the district courts.