United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 04-60928

————————————————

GEORGE DALE, Commissioner of Insurance for the State of
Mississippi, in his official capacity as Receiver of Franklin
Protective Life Insurance Company, Family Guaranty Life Insurance
Company, and First National Life Insurance Company of America;
W. DALE FINKE, Director of the Department of Insurance for the
State of Missouri, in his official capacity as Receiver of
International Financial Services Life Insurance Company;
KIM HOLLAND, Insurance Commissioner for the State of Oklahoma, in
her official capacity as Receiver of Farmers and Ranchers Life
Insurance Company;
JULIE BENAFIELD BOWMAN, Insurance Commissioner for the State of
Arkansas, in his official capacity as Receiver of Old Southwest
Life Insurance Company;
PAULA A. FLOWERS, Commissioner of Commerce and Insurance for the
State of Tennessee, in her official capacity as Receiver of
Franklin American Life Insurance Company;

Plaintiffs-Appellees,

v.

EMILIO COLAGIOVANNI, et al.,

Defendants,

HOLY SEE, also known as Vatican City State,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
For the Southern District of Mississippi

————————————————

Before REAVLEY, DAVIS and WIENER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellees, receivers for various insurance companies, brought suit against individuals and entities allegedly involved in a conspiracy to fraudulently acquire and loot the insurance companies. In their complaint, Plaintiffs alleged that the Holy See, also known as the Vatican City State, participated in the scheme through its agent Emilio Colagiovanni, and sought damages for RICO violations, civil conspiracy, common law fraud, and aiding and abetting fraud. The Vatican moved for dismissal under Rule 12(b)(1) based, in part, on its claim of immunity under the Foreign Sovereign Immunities Act ("FSIA"). Plaintiffs argued that the Vatican is subject to suit under the commercial exception to the FSIA, 28 U.S.C. § 1605(a)(2), either because Colagiovanni acted with the actual or apparent authority of the Vatican, or because the Vatican ratified his acts. The district court declined to consider Plantiffs' actual authority and ratification theories, and instead denied the Vatican's rule 12(b)(1) motion on grounds that when Colagiovanni acted with the apparent authority of the Vatican, this conduct fell within the commercial exception to FSIA. We vacate that judgment and remand this case to the district court.

I.

A.

Between 1990 and 1999, Martin Frankel engaged in a massive insurance fraud scheme, using various alter egos and front organizations to acquire and loot several insurance companies. Plaintiffs, the receivers of several of the targeted insurance companies, allege that during 1998 and 1999 Frankel was aided in his fraudulent activities by Defendant Emilio Colagiovanni, among others. Frankel pled guilty to criminal charges of fraud and racketeering, and is not a party to this suit. Colagiovanni was a Roman Catholic "monsignor," a judge *emeritus* of the *Tribunal della Rota Romana* (the "*Rota*"), one of the Vatican's three appellate courts, and a professor in the *Studio Rotale*, a graduate program connected to the *Rota*. Colagiovanni was also a senior member of the "*Curia*," the Vatican's government, and was the President of the *Monitor Ecclesiasticus* Foundation (the "MEF"), an autonomous entity that published a journal of canon law.

In 1998, Frankel embarked on a scheme to utilize the Roman Catholic Church as the latest in a series of front organizations to acquire insurance companies. Frankel, masquerading as "David Rosse," a philanthropist who wished to create a charitable foundation, eventually worked his way up to a meeting with

3

Colagiovanni. His plan called for capitalization of the foundation in the amount of $55 million, $50 million of which would be for insurance company acquisitions and $5 million of which would be available for charitable use. Although the Vatican initially rejected Frankel's plan to create a Vatican-affiliated entity, Frankel ultimately created an organization called the St. Francis of Assissi Foundation (the "SFAF"). Colagiovanni agreed to allow MEF to serve as SFAF's settlor of record, and Frankel donated funds to the MEF, which were in turn given to SFAF, under Frankel's control.

By March of 1999, Frankel was being investigated by the Mississippi Department of Insurance regarding his acquisitions, and received a letter from the Department asking specific questions about Frankel's investment practices. Frankel responded by causing SFAF to purchase the trust that had been involved in the acquisitions, which in turn caused the Department to set an emergency hearing. Colagiovanni appeared at the hearing and represented that Vatican-related entities had contributed over $1 billion to SFAF. Meanwhile, Frankel prepared to leave the country. Mississippi regulators immediately froze the assets of the Frankel-controlled companies, and the regulators for Tennessee, Missouri, Oklahoma, and Arkansas quickly followed suit.

4

B.

The receivers for various insurance companies affected by Frankel's scam filed suit against a variety of individuals and entities involved, including both Colagiovanni and the Vatican. Because of the complexity of the underlying law and facts, the district court ordered that motions to dismiss be filed in phases, beginning primarily with subject matter jurisdiction. The Vatican filed its first motion to dismiss under Rule 12(b)(1), arguing that the Vatican was immune from suit under the FSIA. Plaintiffs argued that the Vatican's conduct fell within the commercial activity exception to the FSIA, and tied the Vatican to Colagiovanni's conduct based on apparent authority, actual authority, and ratification theories. The district court agreed, and denied the Vatican's motion in part based on an apparent authority theory, expressly declining to reach Plaintiff's actual authority or ratification theories. The Vatican also urged several other theories under which it was immune to suit under FSIA, but the district court rejected each of those arguments and this appeal followed.

II.

The district court's order denying the Vatican's 12(b)(1) motion is immediately appealable. 28 U.S.C. § 1291; <u>Byrd v.</u>

5

<u>Corporacion Forestal y Industrial De Olancho S.A.</u>, 182 F.3d 380, 385 (5th Cir. 1999). The district court's ruling on a purely legal motion to dismiss based on foreign sovereign immunity grounds is reviewed *de novo*. <u>Walter Fuller Aircraft Sales, Inc.</u> <u>v. Republic of Philippines</u>, 965 F.2d 1375, 1383 (5th Cir. 1999).

III.

The FSIA provides the sole source of subject matter jurisdiction in suits against a foreign state. <u>Argentine</u> <u>Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 434-39 (1989). "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." <u>Byrd</u>, 182 F.3d at 388 (quoting <u>Moran v. The Kingdom of Saudi</u> <u>Arabia</u>, 27 F.3d 169, 172 (5th Cir.1994) (citing 28 U.S.C. § 1604)). "However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." <u>Id.</u>

Plaintiffs argue that the Vatican is subject to suit under the commercial activity exception to the FSIA, because its agent, Colagiovanni, engaged in commercial activity while possessing apparent authority.[1] The Vatican argues, however, that an agent

---

[1] Plaintiffs also argued to the district court that Colagiovanni possessed actual authority, and that his commercial acts were ratified by the Vatican. The district court expressly declined to rule on these issues, and we decline to examine those theories in the first instance.

acting only with apparent authority is insufficient to trigger the commercial activity exception. While this is an issue of first impression in this Circuit, both the Fourth and Ninth Circuits, the only Circuits to have directly addressed the issue, have concluded that conduct by an agent acting with apparent authority is insufficient to trigger the commercial activity exception and give a basis for jurisdiction against the state under FSIA. See *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 399-400 (4th Cir. 2004); *Phanuef v. Republic of Indonesia*, 106 F.3d 302, 307-08 (9th Cir. 1997).

The commercial activity exception provides that a foreign state shall not be immune in any action

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The provision makes clear that the commercial activity must be that "*of the foreign state*." The Ninth Circuit considered the text of the exception in <u>Phanuef</u>:

> All three clauses of the exception require "a commercial activity of the foreign state." "[C]ommercial activity of the foreign state" clearly entails commercial activity in which the foreign state engaged. Because a foreign state acts through its agents, an agent's deed which is based on the actual authority of the foreign state constitutes activity "of the foreign state."

106 F.3d 302, 307-08 (9th Cir. 1997) (citations omitted). The court in <u>Phanuef</u> concluded that "[t]he language of the commercial activity exception compels the conclusion that only evidence of actual authority can be used to invoke that exception." <u>Id.</u> at 307. The court explained:

> When an agent acts beyond the scope of his authority, however, that agent "is not doing business which the sovereign has empowered him to do." If the foreign state has not empowered its agent to act, the agent's unauthorized act cannot be attributed to the foreign state; there is no "activity of the foreign state."

<u>Id.</u> at 307-08 (citations omitted).

8

The conclusion that actual authority is required to trigger the commercial activity exception is also supported by the line of cases in which courts have construed foreign sovereign immunity to extend to an individual acting in his official capacity on behalf of a foreign state. The Fourth Circuit, the only Circuit other than the Ninth to directly address the issue presented in this case, relied on this line of cases in Velasco v. Gov't of Indonesia to hold that the plaintiff must demonstrate that the agent acted with the actual authority of the state to trigger the commercial activity exception. 370 F.3d 392, 399-400 (4th Cir. 2004) (citing Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 388 (5th Cir. 1999) (FSIA protects individuals acting within their official capacity as officers of corporations considered foreign sovereigns); El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996) (individual sued for actions on behalf of government bank was immune from suit under FSIA); Chuidian v. Philippine Nat'l Bank, 912 F.2d 1095, 1101-03 (9th Cir. 1990) (interpreting section 1603(b) to include individuals sued in their official capacity)).

Plaintiffs point to two decisions of this court to support their argument that apparent authority is sufficient to trigger the commercial activity exception, Arriba, Ltd. v. Peroleos Mexicanos, 962 F.2d 528 (5th Cir. 1992), and Hester Int'l Corp.

9

v. Federal Republic of Nigeria, 879 F.2d 170 (5th Cir. 1989). Neither opinion, however, controls our decision in this case.

Both opinions address the presumption of separate juridical status of government instrumentalities under the test articulated by the Supreme Court in First Nat'l City Bank v. Banco Para El Comercio Exterio De Cuba, 462 U.S. 611 (1983) ("Bancec"). See Hester, 879 F.2d at 176-81; Arriba, 962 F.2d at 534-37. Neither case directly addresses the apparent authority of an individual agent in the context of the commercial activity exception. The two inquiries are analytically distinct. The Court in Bancec held that when a plaintiff sues a government instrumentality of a foreign state, we apply a presumption that the instrumentality is independent of the foreign state for purposes of the FSIA. Hester, 879 F.2d at 176 (citing Bancec, 462 U.S. at 627). A plaintiff can over come that presumption, however, in certain circumstances by demonstrating that the instrumentality is the agent or alter ego of the foreign state. Id. at 176-179. The inquiry in that context, then, is whether the state exercises day-to-day control over the agency, not whether a particular type of agency relationship is sufficient under the commercial activity exception. Under the commercial activity exception, however, the court must determine whether the commercial activity is "of the foreign state."

10

IV.

The Vatican urges several additional theories arguing that it is not subject to jurisdiction under the FSIA: (1) the creation of a charitable foundation is not a commercial activity; (2) Colagiovanni's criminal activity was not a commercial activity; (3) the alleged claims were tort-based, and therefore not within the commercial activity exception; and (4) the Vatican could not form the requisite intent necessary for Plaintiffs' fraud-based claims. The district court considered and rejected each of these arguments, and we affirm the district court's judgment on these issues on the basis of its well-reasoned opinion.

V.

We agree with the Fourth and Ninth Circuits that an agent's acts conducted with the apparent authority of the state is insufficient to trigger the commercial exception to FSIA. We therefore VACATE the contrary ruling of the district court denying immunity to the Vatican. We AFFIRM the remainder of the district court's judgment and remand this case to the district court for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.