# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2022

Lyle W. Cayce
Clerk

No. 22-20021

Preble-Rish Haiti, S.A.,

*Plaintiff—Appellee*,

*versus*

Republic of Haiti,

*Defendants*,

BB Energy USA, L.L.C.,

*Garnishee—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1953

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

The Foreign Sovereign Immunities Act provides a foreign state's property with immunity from prejudgment attachment unless an exception applies. The relevant exception in this case requires a foreign state to explicitly waive its immunity from prejudgment attachment. 28 U.S.C. § 1610(d). Although this court has yet to interpret the § 1610(d) exception, today we hold that an explicit waiver must be, well, *explicit*. Anything short

No. 22-20021

of a foreign state's clearly expressed waiver of immunity from prejudgment attachment will not suffice under § 1610(d). Here, however, the district court entered a writ of attachment based on the erroneous conclusion that Haiti and its agency waived their immunity from prejudgment attachment based on a contract that said nothing about prejudgment attachment. We therefore REVERSE the district court and VACATE the writ.

## BACKGROUND

Plaintiff-Appellee Preble-Rish Haiti, S.A. filed this case pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims in the Federal Rules of Civil Procedure. It sought to attach assets to secure a partial final arbitration award against the Republic of Haiti and the Bureau de Monétisation de Programmes d'Aide au Developpement (BMPAD). Garnishee BB Energy USA, L.L.C. admits to holding credits belonging to BMPAD located in the Southern District of Texas.

### A. Underlying Facts

In May 2020, Preble-Rish, a Haitian company, entered into three contracts with BMPAD, a Haitian government agency, to deliver fuel. The contracts specified that BMPAD would provide a letter of credit as payment. BMPAD did not provide that letter, so the contracts were amended to permit BMPAD to instead make full prepayment pursuant to an invoice Preble-Rish submitted before each delivery. The contracts stated Preble-Rish would make six deliveries of fuel in response to orders from BMPAD.

Relevant here, the contracts had an arbitration clause stating:

In the event of a dispute between the [BMPAD] and [Preble Rish] under this Contract, the dispute shall be submitted by either party to arbitration in New York. . . . The decision of the arbitrators shall be final, conclusive and binding on all Parties.

2

No. 22-20021

Judgment upon such award may be entered in any court of competent jurisdiction.

Pursuant to the contracts, BMPAD and Preble-Rish executed their duties without issue on four deliveries of fuel. Problems arose on the fifth delivery. To resolve these issues, on November 20, 2020, Preble-Rish sent BMPAD a notice demanding arbitration in New York. BMPAD did not appear in the arbitration and refused to participate. On December 22, 2020, Haiti and BMPAD filed a petition in New York state court to obtain an order to stay the pending arbitration with Preble-Rish. Preble-Rish opposed the petition and filed a cross-motion to compel arbitration.

While Haiti and BMPAD's action was pending in New York state court, on August 6, 2021, the arbitration panel issued a partial final award of security. The award required BMPAD to post approximately $23 million in security.

On September 27, 2021, the New York state court denied BMPAD's petition to stay the arbitration and granted Preble-Rish's motion to compel arbitration. The order states: "It is beyond dispute that the parties freely and unequivocally agreed to arbitrate all of their disputes in New York." That order was affirmed by the New York Appellate Division on April 12, 2022. The Appellate Division stated BMPAD failed to show the arbitration clause was invalid under Haitian law.

## B. Procedural History

On June 15, 2021, Preble-Rish filed this Rule B attachment action in the Southern District of Texas to secure any final award from the pending arbitration and the partial final award of security. In its first complaint, Preble-Rish asserted claims for breach of contract and unjust enrichment. After complying with Rule B, Preble-Rish sought a writ of attachment for property belonging to BMPAD located in the district but in the possession of

3

No. 22-20021

BB Energy. Preble-Rish alleged that BMPAD prepays BB Energy for fuel and that the prepaid funds are property of BMPAD present in the district.

The district court issued the writ of attachment and Preble-Rish served BB Energy with the writ on July 1, 2021. BB Energy promptly moved to dismiss and argued the district court lacked jurisdiction over the complaint based on BMPAD's sovereign immunity.[1] BB Energy also moved to vacate the attachment because the contracts at issue were not maritime in nature and therefore precluded admiralty jurisdiction as needed for Rule B attachment. The district court stayed the writ to determine the subject matter jurisdiction issue.

On August 10, 2021, the district court denied BB Energy's motion to dismiss because it concluded BMPAD had waived sovereign immunity by agreeing to arbitrate disputes under the contracts. The district court also concluded BMPAD explicitly waived its sovereign immunity from prejudgment attachment by agreeing to provide letters of credit or prepayment as stated in the contracts and because the property that sought to be attached was "used for commercial activity in the United States." Having concluded that BMPAD waived its sovereign immunity generally and from prejudgment attachment, the district court determined it had subject matter jurisdiction over the case and reinstated the writ of attachment. BB Energy did not appeal this order.

On September 3, 2021, the district court granted BB Energy's motion to vacate the writ of attachment. The district court concluded the contracts

---

[1] To date, neither Haiti nor BMPAD has appeared in this case. BB Energy nonetheless has standing to assert the sovereign immunity defense because the property it holds qualifies as "property of a foreign state." *See Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004).

were not maritime in nature and did not satisfy the requirements for admiralty jurisdiction for Rule B attachments.

Preble-Rish filed an amended complaint[2] and added claims for maritime fraud and conversion. BB Energy moved to dismiss and again, raised BMPAD's sovereign immunity by arguing the new maritime tort claims fell outside the scope of the arbitration clause and BMPAD did not waive its immunity from prejudgment attachment. The district court deferred ruling on the motion to dismiss and directed the parties to discovery. BB Energy appealed and this court remanded the case with instructions for the district court to limit discovery to the sovereign immunity jurisdictional issue. *See Preble-Rish Haiti, S.A. v. BB Energy USA, LLC*, No. 21-20534, 2021 WL 5143757, at *3 (5th Cir. Nov. 4, 2021) (unpublished). On remand, the parties agreed no further discovery was needed to resolve the issue.

On January 4, 2022, the district court denied BB Energy's motion to dismiss based on sovereign immunity. The district court relied on its August 10, 2021 decision to conclude that the arbitration clause waived BMPAD's immunity from suit. It therefore only determined whether the arbitration clause covered maritime tort claims in the amended complaint. The court broadly construed the arbitration clause's waiver for disputes "under this contract" to encompass the maritime tort claims in addition to the breach of contract claims. The district court also applied issue preclusion as to whether Haitian law prohibited arbitration against governmental entities and cited the New York state court's order denying BMPAD's motion to stay arbitration. Although BB Energy raised BMPAD's sovereign immunity from

---

[2] Preble-Rish first filed a notice of appeal and a motion for reconsideration, or in the alternative, a motion for leave to file an amended complaint. After the district court granted Preble-Rish leave, Preble-Rish withdrew its notice of appeal and filed its amended complaint.

No. 22-20021

prejudgment attachment again, the district court stated it had already decided that issue and cited its August 10, 2021 order.

BB Energy appeals the January 4, 2022 order pursuant to the collateral order doctrine.[3]

## DISCUSSION

This case turns on the interpretation of 28 U.S.C. § 1610(d) which provides a limited exception to the general rule that a foreign state and its property is entitled to sovereign immunity. That exception applies only when "the foreign state explicitly waived its immunity from attachment prior to judgment." § 1610(d). Here, there was no explicit waiver. So we conclude BMPAD did not waive its immunity from prejudgment attachment and the district court erred in concluding otherwise.

Without this waiver, the district court did not have jurisdiction to enter the writ of attachment against BB Energy.[4] We accordingly reverse the district court and vacate the writ.

The denial of sovereign immunity is reviewed de novo. *See Frank v. Commonwealth of Antigua and Barbuda*, 842 F.3d 362, 367 (5th Cir. 2016). A foreign state's sovereign immunity deprives the federal courts of jurisdiction. The Foreign Sovereign Immunities Act (FSIA) therefore "provides the sole source of subject matter jurisdiction in suits against a foreign state." *Id.*

---

[3] Contrary to Preble-Rish's argument that this court lacks appellate jurisdiction, the collateral order doctrine permits review of the denial of sovereign immunity from writs of garnishment or attachment. *See Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen. del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C.*, 923 F.2d 380, 386 (5th Cir. 1991).

[4] Because we resolve this appeal on the prejudgment attachment issue, we assume without deciding that BMPAD implicitly waived its sovereign immunity from suit generally pursuant to 28 U.S.C. § 1605(a)(1).

No. 22-20021

(quoting *Dale v. Colagiovanni*, 443 F.3d 425, 427–28 (5th Cir. 2006)); 28 U.S.C. § 1604. Pursuant to the FSIA, the general rule is that foreign states are immune from suit in American courts. 28 U.S.C. § 1604; *see also Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 532–33 (5th Cir. 1992). Along with immunity from suit generally, the FSIA provides a foreign state's property with immunity from attachment or execution unless an exception applies. 28 U.S.C. § 1609.

The relevant exception here is § 1610(d), which states:

The property of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action . . . if—

(1) the foreign state has explicitly waived its immunity from attachment prior to judgment . . . and

(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

This exception has three conditions: (1) the property must be used for a commercial purpose in the United States; (2) there must be an explicit waiver; and (3) the purpose of attachment must be to secure satisfaction of a judgment. *See Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 983 (7th Cir. 2014). BB Energy only challenges the first two elements; it argues there is no explicit waiver from prejudgment attachment and the credits it holds for BMPAD are not "used for commercial activity in the United States."

7

This court has not yet interpreted the § 1610(d) exception or its requirements. We are confident, however, that the explicit waiver requirement has not been met here.[5]

To interpret § 1610(d), "we begin 'where all such inquiries must begin: with the language of the statute itself.'" *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1056 (2019) (alterations and citations omitted). Section 1610(d) revokes sovereign immunity for a foreign state's property "if the foreign state has explicitly waived its immunity from attachment prior to judgment." The key word here is "explicitly." This naturally and ordinarily means in a definite and unambiguous manner. To be unequivocal, express, clear, or plain. Dictionaries contrast "explicitly" with "not merely by implication or implicitly." *E.g.*, *Explicitly*, Oxford Eng. Dictionary (3d ed. June 2016).

We, like other courts, think an explicit waiver must be *explicit* "in the common sense meaning of that term." *S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 416 (2d Cir. 1983). While an explicit waiver need not include the words "prejudgment attachment" or the like, an asserted waiver "must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment." *Id.* This requires "unmistakable and plain language." *Id.*

The importance of the explicit waiver requirement is also highlighted when we compare § 1610(d) to the language used in other exceptions in the FSIA. For instance, there are several other exceptions that permit a waiver to be explicit *or* implicit. *Compare* §§ 1605(a)(1), 1610(a)(1) (allowing wavier to be explicit or by implication), *with* § 1610(d). *See also S & S Machinery*, 706 F.2d at 416 ("The requirement that the waiver of immunity from

---

[5] As for the other two requirements, we find no error in the district court's analysis.

prejudgment attachment be *explicitly* made is underscored both by the plain language of § 1610(d) and by the contrast between § 1610(d) and § 1610(a)." (emphasis in original)).

With this understanding, we can only conclude that BMPAD did not explicitly waive its immunity from prejudgment attachment. The only basis for a waiver of any immunity is the arbitration clause in the contract between BMPAD and Preble-Rish. The arbitration clause is relevant to whether BMPAD waived its sovereign immunity from suit generally, but a waiver of immunity from suit has "no bearing upon the question of immunity from prejudgment attachment." *S & S Machinery*, 706 F.2d at 417.

Even when we look at the arbitration clause and the contract as a whole, we find nothing to support an explicit waiver of immunity from prejudgment attachment. The clause does not contemplate prejudgment attachment or any other liabilities. Nor does it mention security or letters of credit in the context of disputes between the parties. Although Preble-Rish and BMPAD agreed any arbitration awards would "be final, conclusive and binding," that language does not contemplate any specific remedy or allow the arbitration panel to ignore the immunity from prejudgment attachment as provided by the FSIA.

And in prior cases where this court has concluded the § 1610(d) exception applied, the parties' agreement has *explicitly* said sovereign immunity is waived "including any immunity from the jurisdiction of any court or *from any execution or attachment in aid of execution prior to judgment or otherwise.*" *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1177 (5th Cir. 1989) (emphasis added); *see also Mangattu v. M/V Ibn Hayyan*, 35 F.3d 205, 210 (5th Cir. 1994) (rejecting argument that agreement to laws of another country is sufficient to find an explicit waiver); *id.* ("If the subsequent law of another country in fact waives immunity, it would be an

*implicit waiver ....*" (emphasis added)). Such explicit language is absent here.

Preble-Rish urges us to find waiver because, in the contracts, BMPAD agreed to provide letters of credit or full prepayment, i.e., agreed to provide security in Preble-Rish's favor. To support this theory, Preble-Rish points to *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255 (2d Cir. 2003). In that case, the Second Circuit determined a sovereign entity agreed to "apply for and secure delivery to [the other party] a clean irrevocable Letter of Credit issued by a bank" and therefore demonstrated that the "parties embraced the usefulness of letters of credit as a means of securing their respective rights and obligations and as a means of facilitating the transaction generally." *Mut. Marine Off.*, 344 F.3d at 261 (citations omitted). The parties in that case had also agreed to arbitration and explicitly stated the "arbitrators are relieved of all judicial formalities and may abstain from following the strict rules of law." *Id.* (internal quotation marks and citations omitted). Although the district court accepted this theory, we are unpersuaded.

The Second Circuit in *Mutual Marine* noted the arbitration clause at issue did not *explicitly authorize* the arbitrator to order a letter of credit as security against a possible final award. *See id.* So rather than relying on § 1610(d)'s demand that a waiver be explicit, the court looked to other provisions in the agreement to *infer* a waiver of immunity from prejudgment attachment. If the court needs to infer a waiver, then the waiver is not explicit. *See Pine Top*, 771 F.3d at 985 (concluding a waiver that must be discerned from contract clauses "that do not speak to orders of preanswer security in judicial proceedings" is not explicit). And although BMPAD agreed to provide letters of credit, the contracts in this case lack the same generous arbitration clause that allows arbitrators to "abstain from following the strict rules of law." *Id.* Without such authorization, the contract here

simply provides for letters of credit during the underlying transaction—not in any disputes that are ultimately submitted to arbitration. *Mutual Marine* is thus distinguishable and unpersuasive on the issue before us.

## CONCLUSION

To satisfy § 1610(d), an explicit waiver of immunity from prejudgment attachment must be express, clear, and unambiguous. Anything short of that is insufficient. Because there is no such explicit waiver in the contract or elsewhere, the district court erred in concluding BMPAD waived its sovereign immunity from prejudgment attachment. We accordingly REVERSE the district court and VACATE the writ of attachment.